108 F.3d 1378
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John VENTURA, Plaintiff-Appellant,
v.
CITY OF INDEPENDENCE, Walter Ellert, Dorothy Ornas, Dennis
Messina and George Spilker, Defendants-Appellees.
 No. 95-3582.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1997.
 
 Before: MERRITT and COLE, Circuit Judges and ECHOLS.[1]
 PER CURIAM.
 
 
 1
 Plaintiff John Ventura appeals the district court's grant of summary judgment in favor of the defendants in his employment discrimination suit under Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117. Ventura alleges that his asthma constitutes a disability under the ADA and argues that his former employer, the City of Independence, Ohio, and several city officials (collectively, the "City") discriminated against him on the basis of that disability by reclassifying him, reducing his pay, and failing to accommodate his physical restrictions. Ventura also claims that the City breached its collective bargaining agreement with the American Federation of State, County and Municipal Employees, and retaliated against him in violation of 42 U.S.C. § 12203 of the ADA for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Finally, Ventura alleges under state law that the City intentionally caused him emotional distress. For the following reasons, we AFFIRM the district court's grant of summary judgment.
 
 I.
 
 2
 This court reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. City Mgmt. Corp. v. United States Chem. Co., Inc., 43 F.3d 244, 250 (6th Cir.1994); Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990); see Moore v. Phillip Morris Cos., 8 F.3d 335, 339 (6th Cir.1993). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 II.
 
 3
 Ventura first contends that the district court erred in concluding that his asthma does not constitute a disability within the coverage of the ADA. Ventura presented evidence to the district court that his asthma causes him difficulty in breathing and prevents him from working around diesel fumes, in high humidity or in extreme temperatures. He also notes that his asthma restricts his ability to work irregular hours, such as the night shift. Ventura argues that he presented sufficient evidence to the district court to establish that his asthma significantly impairs his ability to work and breathe and, thus, that he is "disabled" within the meaning of the ADA.
 
 
 4
 The ADA mandates that an employer shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. In order to assert a claim of discrimination under the ADA, a plaintiff must satisfy the threshold requirement of demonstrating that he or she is disabled under the statute. See Jasany v. United States Postal Serv., 755 F.2d 1244, 1248 (6th Cir.1985) (construing the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-96, the model for the ADA).[2] Many physical or mental impairments "do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630, App. § 1630.2(j). Rather, a physical or mental impairment "rises to the level of disability if the impairment substantially limits one or more of the individual's major life activities." Id; see 42 U.S.C. § 12102(2)(A) (defining a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual...."). " 'Major life activities' are those basic activities that 'the average person in the general population can perform with little or no difficulty ... [such as] caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " 29 C.F.R. pt. 1630, App. § 1630.2(i). The determination of whether a particular impairment constitutes a disability must be made on a case-by-case basis. Blanket determinations that a particular condition is not a disability should be avoided. See 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is ... based ... on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others....").
 
 
 5
 In the present case, Ventura has failed to demonstrate that his asthma substantially impairs his ability to breathe or work and, thus, has failed to demonstrate that he is disabled under the ADA. Ventura admitted at his deposition that, since he was diagnosed with asthma, he has engaged in a number of activities that belie his claim that his ability to breathe and work have been significantly restricted. For example, Ventura admitted that his asthma has not prevented him from playing baseball and football, performing calisthenics, walking, playing the saxophone, occasionally running, singing, and water skiing. There is also evidence that, although Ventura may be precluded from working as a Grade I maintenance employee for the City, he is able to engage in numerous other types of employment. See Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir.1994) ("An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one.") (citing Jasany, 755 F.2d at 1249 n. 3.). Ventura admits that he has engaged in employment-related activities such as landscaping, painting, laying ceramic tile, constructing residential decks, plastering, pressure-washing buildings, and working as a late-night security officer. Considering that Ventura is able to perform a wide range of activities and hold several different types of jobs, we do not believe that his inability to perform the duties of the Grade I maintenance position with the City renders him disabled within the meaning of the ADA. See Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir.1992) (holding that "an inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substantially limit employment generally.")
 
 
 6
 Accordingly, Ventura has failed to offer sufficient evidence to demonstrate that his asthma has substantially impaired his ability to work or breathe or impacted any other major life activity. Thus, the district court did not err in concluding that Ventura was not disabled within the meaning of the ADA and granting the City summary judgment as to Ventura's discrimination claim.
 
 IV.
 
 7
 Ventura next contends that the district court erred in concluding that he failed to establish a prima facie case of retaliation in violation of the ADA. See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter."). Specifically, Ventura alleges that the City "discharged" him as a part-time patrol officer because he had filed a charge of disability discrimination with the EEOC.[3] Ventura notes that he had filed the EEOC charge eight months earlier concerning his demotion from a Grade I to a Grade III maintenance position in another City department. Ventura also notes that his "termination letter" was sent on the same day that an EEOC investigator conducted an on-site investigation of his disability discrimination charge.
 
 
 8
 To establish a prima facie case of retaliation, Ventura must show that (1) he was engaged in a protected activity; (2) the City knew of his exercise of this protected activity; (3) the City then took an adverse employment action; and (4) there was a causal connection between the protected activity and the City's actions. See Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.1990) (citing Wrenn v. Gould, 808 F.2d 493 (6th Cir.1987)). Once the plaintiff has established a prima facie case, "the burden shifts to the defendant 'to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.' " Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir.1994) (quoting Texas Dept't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)); see Jasany, 755 F.2d at 1249-50 n. 5 (applying the McDonnell Douglas analysis and burden-shifting analysis to handicap discrimination cases). The plaintiff must then produce direct, indirect, or circumstantial evidence that the employer's decision was a result of his or her disability. See Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989); see Manzer, 29 F.3d at 1084.
 
 
 9
 Plainly put, Ventura has failed to establish a prima facie case of retaliation under the ADA. Although Ventura engaged in a protected activity when he filed a charge of disability discrimination with the EEOC, he has not established the remaining elements of the retaliation claim. First, Ventura has failed to produce any evidence that Chief Appenzeller was even aware that Ventura had filed an EEOC complaint. Cf. Landefeld v. Marion General Hosp., Inc., 994 F.2d 1178 (6th Cir.1993) (finding that plaintiff's failure to prove that the board of directors had knowledge of the plaintiff's disability prevented the plaintiff from recovering for discriminatory discharge under the Rehabilitation Act). Moreover, as the district court noted, the mere fact that Chief Appenzeller's letter was sent on the same day that an EEOC investigator conducted an on-site investigation at the City garage[4] is insufficient to support an inference of discrimination. Although the timing of events is relevant in determining whether a plaintiff has put forth a prima facie case of retaliation, see Canitia, 903 F.2d at 1066, evidence that certain events occurred in close proximity is insufficient, standing alone, to support such a claim.
 
 
 10
 Second, Ventura has failed to show that the City ever took adverse employment action against him. Chief Appenzeller's letter stated only that, according to the Ohio Peace Officers Training Council, Ventura was required to submit to retraining and turn in his equipment because he had not been active as a patrol officer for more than one year. Ventura has failed to provide any evidence that the letter constituted a termination letter and has not demonstrated any discriminatory enforcement of the rules of the Ohio Peace Officers Training Council. For example, Ventura produced no evidence that other patrol officers who were inactive for more than one year were not required to undergo retraining or turn in their equipment.
 
 
 11
 Third, Ventura failed to show any causal connection between his "discharge" from his part-time patrol officer position and his filing of an EEOC complaint. Because Ventura failed to produce any evidence that Chief Appenzeller was even aware of his EEOC complaint, Ventura cannot show that Appenzeller sent him the letter on that basis.
 
 
 12
 Fourth, even assuming that Ventura established a prima facie case of discrimination, his claim nevertheless fails as the City articulated a legitimate, non-discriminatory reason for its actions which Ventura failed to rebut. See Manzer, 29 F.3d at 1082. Specifically, the City notes that, under Ohio law, a peace officer must turn in his equipment if he has not worked in more than one year and fails to undergo required retraining. Not only has Ventura failed to rebut the City's assertion, he readily admits that he failed to meet these requirements and, as such, was required by law to turn in his equipment. Thus, even if Ventura had established a prima facie case of discrimination, he has failed to rebut the City's articulated, nondiscriminatory reason for Chief Appenzeller's sending the letter.
 
 V.
 
 13
 Ventura also contends that the district court erred by granting summary judgment in favor of the City on his claims under the City's collective bargaining agreement. Ventura argues that the City breached the agreement when it recategorized him from a Grade I to a Grade III maintenance position and refused to accommodate his alleged disability.[5] Notably, Ventura does not contest the district court's finding that his claims under the collective bargaining agreement are "coextensive with his rights under the ADA."
 
 
 14
 Because we have concluded that Ventura is not disabled within the meaning of the ADA and because the district court found that Ventura's rights under the ADA and the agreement are coextensive, we conclude that the City did not breach the agreement when it recategorized Ventura from a Grade I to a Grade III maintenance position. Thus, the district court properly granted summary judgment in favor of the City on Ventura's claim for breach of contract.
 
 VI.
 
 15
 Ventura finally contends that the district court erred in dismissing his state law claims. However, once a district court has dismissed all of a plaintiff's federal claims, that court may decline to exercise supplemental jurisdiction over any remaining state law claims. See 28 U.S.C. § 1367(c)(3); Landefeld, 994 F.2d at 1182 (holding that, where the federal claims are dismissed before trial, the state claims should be dismissed as well) (quoting Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir.1992)). Because the district court properly granted summary judgment on all of Ventura's federal claims, it did not err in declining to exercise supplemental jurisdiction over his remaining state claims and dismissing those claims without prejudice.
 
 VII.
 
 16
 Accordingly, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.
 
 
 
 [1]
 The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [2]
 When Congress drafted the ADA, it intended that the case law developed under the Rehabilitation Act would serve as a guide to interpreting the ADA's provisions. See, e.g., H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 3, at 41, 42 (stating that the flexible approach used under the Rehabilitation Act for determining undue hardship is appropriate for the ADA as well and noting that, "[l]ike the Rehabilitation Act the burden is on the employer to demonstrate that the needed accommodation would cause an undue hardship") (citing Nelson v. Thornburgh, 567 F.Supp. 369 (E.D.Pa.1983) as an example of the Rehabilitation Act case law serving as a guide to ADA courts in utilizing a flexible approach to determining undue hardship)
 Thus, Congress has specifically directed that courts impose similar standards under the Rehabilitation Act and the ADA to prevent inconsistent or conflicting requirements. See 29 U.S.C. § 794(d) (stating that the standards used to determine whether there has been a violation of this section shall be the same as those applied under Title I of the ADA); 42 U.S.C. § 12117(b) (directing that the agencies charged with enforcing the ADA and REhabilitation Act shall coordinate their procedures so as to prevent the "imposition of inconsistent or conflicting standards for the same requirements under this title and the Rehabilitation Act of 1973").
 
 
 [3]
 Ventura received a letter from the Chief of Police, Anthony Appenzeller, in April 1993. The letter informed Ventura that, because he had not worked for more than a year as a part-time patrol officer, he was required to submit to retraining and return all equipment issued to him. The letter itself did not state whether Ventura's employment was terminated
 
 
 [4]
 Ventura worked at the City garage in his maintenance position, not in his position as a part-time patrol officer. Thus, Chief Appenzeller would not have even known about the on-site investigation unless informed by others
 
 
 [5]
 Plaintiff asserts that the primary distinction between a Grade I employee and a Grade III employee is that the former is expected to supervise or lead a crew. The reclassification also resulted in a fifty-eight-cents-per-hour reduction in pay