Mary Elizabeth BOONE, Plaintiff,

v.

The Honorable Janet RENO, Attorney General, Defendant.

No. CA 99–0176(RCL).

United States District Court, District of Columbia.

Nov. 8, 2000.

Richard L. Swick, Swick & Shapiro, P.C., Washington, DC, for Plaintiff.

Wilma A. Lewis, Mark E. Nagle, Claire Whitaker, Washington, DC, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LAMBERTH, District Judge.

Plaintiff Mary Boone, an applicant for a Special Agent position with the Federal Bureau of Investigation (FBI), was denied a position as a Special Agent because she suffers from asthma. She has filed suit claiming that the denial of her application was a violation of her rights under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* The defendant has filed a motion for summary judgment and a motion to strike plaintiff's expert witnesses. For the reasons stated below, the Court grants the defendant's motion for summary judgment, and denies as moot her motion to strike the plaintiff's expert witnesses.

### I Background

Ms. Boone applied for a position as a special agent with the FBI in November 1995 and received a conditional offer of employment in February 1996. One of the conditions of employment was the satisfactory completion of a pre-employment physical examination.

That examination was performed in November of 1996 by Dr. Ruby, a contract doctor with the FBI. The physician determined that Ms. Boone was medically qualified to serve as a Special Agent. However, Ms. Boone stated on a "Standard Form 88" filled out during this visit that she was taking medicine for asthma, and had been hospitalized as a result of severe asthmatic episodes three times, in November 1995, Spring 1994 and Spring 1985. *See* Defendant's Memorandum, Ex. 3.

Upon receipt of the Form 88, the FBI's Health Care Unit (HCPU) determined that further information was needed to evaluate Ms. Boone's physical fitness for service as an FBI agent. The HCPU sent a "Pulmonary Questionnaire" to Ms. Boone and asked her to have a physician of her choice complete it. On this form, her physician, Dr. Wynn indicated that the triggers for Ms. Boone's asthma attacks were cold air, cats, smoke, allergies, and viral illness. *See* Defendant's Memorandum, Ex. 8. Dr. Wynn also indicated that Ms. Boone had suffered two or three severe asthma attacks in 1995 and had been hospitalized twice that year. Based on this questionnaire, the reviewing physician, Dr. Scott, recommended that Ms. Boone be medically disqualified from the Special Agent position.

After going through a set of administrative reviews, the news that she had been deemed unqualified for the Special Agent position reached Ms. Boone. She then looked at the Pulmonary Questionnaire again and determined that there were some erroneous answers. She was allowed to submit additional materials from Dr. Wynn and from a pulmonary specialist, Dr. McCabe. After submitting this supplemental material, she was determined to be physically unfit for service as an FBI Special Agent by another FBI doctor, Dr. Joyce.

After an internal EEO process, Ms. Boone filed this suit on January 21, 1999.

## II. Analysis

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity... conducted by any Executive agency...." 29 U.S.C. § 794. The term "individual with a disability" is defined by 29 U.S.C. § 705(20)(B) to mean "any person who ... has a physical or mental impairment which substantially limits one or more of the person's major life activities ...."

Defendant argues that Ms. Boone's asthma is not a disability under this definition. *See* Defendant's Memorandum at 12. The Supreme Court, interpreting similar language in the Americans with Disabilities Act (ADA) held that when considering whether an impairment is a disability under the ADA the impairment should be considered in its corrected state. *See Sutton,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Because the ADA's language focuses on the individual nature of the impairment, the Court reasoned that the inquiry centers on how the impairment affects the life of the particular individual in question. *See id.* The Court found two provisions of the ADA which led it to the result that an impairment should be considered in its corrected state. First, the Court found that the language in the ADA that the inquiry is with regard to the "major life activities of such individual" shows that the inquiry is focused on the individual, not on the impairment alone. *See Sutton,* 527 U.S. at 483, 119 S.Ct. 2139. The Rehabilitation Act's language is very close to the ADA's language; it states that an impairment is a disability when it limits "one or more of such person's major life activities." 29 U.S.C. § 705(20)(B). Since the language between the two statutes is very similar, this is strongly suggestive that the Supreme Court's reasoning in *Sutton* applies to the Rehabilitation Act as well.

The Court also found that the use of the present indicative verb form in the phrase 'substantially limits' in the ADA strongly suggests that the determination whether an impairment is a disability requires a consideration of the impairment in its corrected state. *See id.* at 482, 119 S.Ct. 2139. The Court found that "[a] 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might', 'could', or 'would' be substantially limiting if mitigating measures were not taken." *Id.* The relevant portion of the Rehabilitation Act uses the identical terms in the present indicative verb form. 29 U.S.C. § 705(20)(B)(i). Both of the Supreme Court's textual arguments about the meaning of the ADA apply with equal force to the text of the Rehabilitation Act. In addition, the Rehabilitation Act contains express language that it should be interpreted in accordance with the ADA. *See* 29 U.S.C. § 794(d). For these reasons, the Court finds that an impairment for the purposes of the Rehabilitation Act must be considered in its corrected state when determining if it is a disability under the Act. The Court considers Ms. Boone's asthma in its corrected state when considering whether it is a disability for the purposes of the Rehabilitation Act.

When considered in its corrected state, Ms. Boone's asthma is not a disability. To be a disability, an impairment must "substantially limit one or more of such person's major life activities." 29 U.S.C. § 705(20)(B)(i). The plaintiff has said that she takes medication for her asthma and that "the medication controls the asthma symptoms." Defendant's Memorandum, Ex. 17 at 53. She also said that her asthma is "pretty well under control." *Id.* at 61. The plaintiff has also said that she is extremely physically fit, despite her asthma, and is able to complete the physical fitness test given by the FBI Academy. *See* Defendant's Memorandum. Ex.9 at 5. Ms. Boone is only disadvantaged by her allergy by not being allowed to be an FBI

Special Agent.[1] However, as the Supreme Court has held, merely being unable to work in one job is not sufficient to qualify as "substantially impaired". *See Murphy v. United Parcel Service*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). Plaintiff has not applied for another position at the FBI, so she has only been deemed unqualified for the position of Special Agent. *See* Defendant's Memorandum, Ex. 17 at 50. Plaintiff is, in fact, currently employed in the law enforcement field as a deputy sheriff. *See id.* Ex. 17 at 4. For these reasons, because the only effect on her life from her asthma is that she cannot become an FBI Special Agent, and because that is only one job, the Court holds that she does not have a disability.

The plaintiff has also argued that the FBI viewed her asthma as an disability even if it is not one. *See* Plaintiff's Opposition at 14. The inquiry with this question is whether the FBI perceived Ms. Boone's asthma as a substantial limit on "one or more of [her] major life activities." One of the FBI physicians who reviewed Ms. Boone's medical records found that she was not medically qualified because "[i]n the event that an asthma attack occurred simultaneously with a personal confrontation, I believe a special agent would be impaired and therefore, not be able to defend themselves [sic] or others with their usual abilities." Defendant's Memorandum, Ex. 15 Dr. Joyce Deposition at 53. The FBI expressed this concern about the possibility of Ms. Boone suffering an asthma attack simultaneously with activities that involve physical confrontation in other places in the record as well. *See, e.g.,* Defendant's Memorandum Ex. 7 at 34 (concern about her participation in "[s]earches, arrests, [and] fugitive apprehensions"); Ex. 10 at 2 ("Ms. Boone could experience an acute asthma attack without warning which could result in sudden and/or subtle incapacitation which would endanger her or others"); Ex. 11 at 21 (FBI Special Agents "have to be able to . . . handcuff an individual, to defend oneself in an altercation, being [sic] able to use physical force").

■ The record establishes that the FBI was concerned that her asthma would prevent her from engaging in physical confrontations. The remaining inquiry is whether physical confrontation is a "major life activity." The EEOC defines "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1614.203(a)(3). Courts have determined that "major life activities" includes breathing[2], reproduction, reading, speaking, walking, and seeing. *See Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 152 (2nd Cir.1998) (breathing); *Bragdon v. Abbott,* 524 U.S. 624, 639, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (reproduction); *Bartlett v. New York State Board of Law Examiners,* 226 F.3d 69, 79 (2nd Cir.2000) (reading); *Otting v. J.C. Penney Co.,* 223 F.3d 704, 709 (8th Cir. 2000) (speaking, walking and seeing). While physical confrontation may have

---

1. Ms. Boone does contend that she is prevented from working in "hundreds, if not thousands, of jobs" in medical fields due to her latex allergy. Plaintiff's Opposition at 16. However, plaintiff has not shown that her latex allergy and her asthma are the same impairment. Indeed, in Complainant's Response to Agency Interogatorries, Defendant's Memorandum Ex. 23, plaintiff said, "Complainant has a history of asthma . . . . She *also* has an allergy to latex. . ." at 2 (emphasis added). This suggests that plaintiff herself considers her latex allergy to be a distinct impairment.

2. Plaintiff argues that the major life activity that is substantially impaired by her asthma is her ability to breath. *See* Plaintiff's Opposition at 12–13. This argument fails for two reasons. First, it does not appreciate that the relevant inquiry is what kind of impairment her asthma is in its corrected state. Second, to show that the FBI viewed her as disabled, she has to show that the FBI thought that her breathing was significantly impaired, not her ability to engage in physical confrontation as a result of an ill-timed breathing difficulty. The record only supports the narrower reading of the consequences of her asthma.

been a major life activity in the Neolithic era, the Court holds that today, at the dawn of the twenty-first century, physical confrontation does not rise to that level. Therefore, the FBI did not view Ms. Boone as substantially impaired with respect to a major life activity.

III   Conclusion

For the forgoing reasons, the Court GRANTS defendant's motion for summary judgment. The defendant's motion to strike expert witnesses is DENIED because it is now moot. This case now stands DISMISSED WITH PREJUDICE.

SO ORDERED.