Cynthia WHITE, Plaintiff,

v.

**HONDA OF AMERICA MFG., INC., Defendant.**

No. C2–01–455.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 30, 2003.

Tony C. Merry, Palmer Volkema & Thomas–2, Columbus, OH, for Plaintiff.

Mary Ellen Fairfield, Vorys Sater Seymour & Pease–2, Columbus, OH, for Defendant.

## ORDER AND OPINION

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Defendant's Motion for Summary Judgment.

For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED.**

## II. Facts

Because this matter is before the Court on Defendant's Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff, the nonmoving party.

Honda of America Mfg., Inc. ("Defendant" or "Honda") hired Cynthia White ("Plaintiff") in 1987 as an Office Support Associate ("OSA"). On October 11, 1999, Defendant transferred Plaintiff to an OSA position in the plastics department. Plaintiff worked in the plastics department for only one week until her asthma symptoms prevented her from ever returning to work in the plastics department. During her first week in the plastics department, Plaintiff began suffering asthma symptoms while in the office. She visited her doctor on Friday October 15, 1999, who wrote a letter stating that she should be moved to a different department because of environmental irritants. Defendant did not find this letter satisfactory because it did not state exactly what environmental irritants posed a problem and precisely what Plaintiff was able and unable to do. After Plaintiff presented this restriction to Defendant, Dr. Robert Shadel, a Honda doctor, evaluated Plaintiff and diagnosed her with "odor sensitivity." He found that she should avoid paints, thinners, solvents, exhaust, and gasoline. Plaintiff's own doctors later agreed with these proposed restrictions.

Defendant assigned Plaintiff to its Modified Work Program from October 18, 1999 to November 3, 1999. In this program, Defendant permitted Plaintiff to provide nonessential services in other departments for two weeks while the company evaluated her work restrictions. After November 3, 1999, Plaintiff went on disability for a year, until November 18, 2000, when Defendant terminated her because she had not actively worked for over a year.

After Plaintiff complained about the air quality in the plastics division, Defendant undertook extensive testing of the air quality in the department. Although original findings did not indicate major problems, Defendant took several steps to improve the air quality including cleaning the air conditioning system and improving ventilation. Defendant ultimately concluded that the air in the department was exceptionally clean and the area well ventilated.

Defendant asked Plaintiff to return to work on January 26, 2000. She was given a paper dust mask to wear while she walked through other areas of the plant that were not as environmentally clean as her office. Honda personnel escorted Plaintiff through the welding department where Plaintiff had a violent asthma attack. Later, on February 2, 2000, Defendant once again tried to reintroduce Plaintiff to her job in the plastics department. In an attempt to limit exposure to fumes in the plant, Defendant took Plaintiff on a different route. Immediately as Honda personnel opened the doors to the building, Plaintiff had another violent asthma attack, which required a trip to the emergency room. Later in May 2000, Defendant made further attempts to return Plaintiff to work. Defendant attempted to fit Plaintiff with a respirator, which she could wear while she walked through other areas of the plant on her way to the plastics department. Attempts at fitting Plaintiff with a respirator, however, failed. Plaintiff was diagnosed as claustrophobic, and unable to wear a respirator. After her diagnosis with claustrophobia, Defendant made no further attempt to return Plaintiff to the plastics department. On November 18, 2000, Honda terminated

Plaintiff because she had not actively worked for over a year.

### III. Procedural History

Plaintiff filed her Complaint in this case on May 16, 2001, stating claims for employment discrimination under both the Americans with Disabilities Act and Ohio law, a claim for common-law wrongful discharge, and a claim for an intentional tort. Defendant filed its Motion for Summary Judgment on August 30, 2002.

### IV. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

### V. Analysis

### A. ADA Claim

■ Plaintiff claims that Defendant failed to make reasonable accommodations for her asthma symptoms in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. §§ 12101–12113 (West 2002). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C.A. § 12112(a) (West 2002). The term discriminate is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A). To succeed on her failure to accommodate claim, therefore, Plaintiff must prove: (1) that she is disabled; (2) that she is otherwise qualified for the job; and (3) that Defendant refused to make a reasonable accommodation for her disability. *Id.; see also Smith v. Ameritech,* 129 F.3d 857, 866 (6th Cir. 1997); *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996).

Defendant argues in its Motion for Summary Judgment that Plaintiff is not disabled for purposes of the ADA. Under the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (West 2002). Plaintiff argues that she has an impairment that substantially limits her major life activity of

breathing, and she also argues that Defendant regards her as disabled.

### 1. Major Life Activity of Breathing

 The parties do not dispute that Plaintiff's asthma is a physical impairment. The Court's determination of whether an impairment substantially limits a person's major life activities is an individualized inquiry. *Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 198–99, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). No impairment constitutes a disability *per se,* but rather an impairment is a disability if it limits the major life activities of the particular individual who is impaired. *Sutton,* 527 U.S. at 483, 119 S.Ct. 2139. Further, in determining whether a person is substantially limited in major life activities, the Court must consider any corrective measures the Plaintiff takes to ameliorate her asthma symptoms. *See id.* at 482, 119 S.Ct. 2139.

Breathing is the only major life activity in which Plaintiff claims she is substantially limited. Defendant argues that Plaintiff's asthma does not substantially limit her ability to breathe. Defendant presents the results of pulmonary function tests as evidence that Plaintiff has normal breathing ability. Defendant also argues that Plaintiff's asthma comes and goes and does not constantly affect her. Defendant notes that Plaintiff is only affected when she is exposed to certain irritating environmental conditions. Furthermore, Defendant argues that Plaintiff is able to take steps to control her asthma. Despite the fact that Plaintiff smokes, she is able to control her asthma with medication and inhalers.

Plaintiff admits that her asthma attacks are only intermittent, but contends that when they strike, they are debilitating, and therefore substantially limit her ability to breathe. Plaintiff has suffered asthma attacks when she has breathed the exhaust of a gas-powered leaf blower, when she has entered places with fresh paint, and when she has breathed car exhaust. She has also suffered from asthma symptoms while working at Honda in the Plastics Department.

In applying its individualized inquiry in this case, this Court must focus on Plaintiff's life experiences, rather than a medical diagnosis of impairment. *See Williams,* 534 U.S. at 198, 122 S.Ct. 681. Just as the Court does not find asthma to be a disability *per se,* the Court does not give much weight to Defendant's evidence that Plaintiff performed normally in certain pulmonary function tests. Further, two of Plaintiff's doctors testified during their depositions that because asthma is an episodic disease, the results of one test on one day do not accurately portray how Plaintiff's asthma limits her.

 To be a disability under the ADA, an impairment must "limit an individual, not in a trivial or even moderate manner, but in a major way." *Gonzales v. Nat'l Bd. of Med. Examiners,* 225 F.3d 620, 627 n. 12 (6th Cir.2000). Therefore, "impairments which merely *affect* major life activities" must be distinguished "from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998).

Numerous courts have found that individuals who are able to treat their asthma such that they are able to engage normally in physical exertion without symptoms are not substantially limited in any major life activity. In *Ventura v. City of Independence,* the Sixth Circuit used an individualized inquiry to determine that a particular individual's asthma did not substantially limit his major life activities because he was able to play sports, perform calisthen-

ics, walk, play the saxophone, run, sing, and water ski. 108 F.3d 1378, 1997 WL 94688, at *2 (6th Cir.1997) (unpublished opinion). In *Ventura,* the plaintiff's asthma did not constitute a disability despite the fact that he had difficulty breathing when exposed to diesel fumes, high humidity, and extreme temperatures. *Id.* 108 F.3d 1378, 1997 WL 94688 at *1. Similarly, in *Minnix v. City of Chillicothe,* 205 F.3d 1341, 2000 WL 191828, at *2 (6th Cir.2000), the Sixth Circuit found that a plaintiff's asthmatic breathing problems were not "as severe, long term, or permanent" as to be substantially limiting because in the absence of diesel fumes he was able to breathe normally. Where a plaintiff had suffered symptoms of asthma while on the job, the Second Circuit decided that a plaintiff was not substantially limited in any major life activity because she was able to breathe and work without substantial limitation. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 724 (2d Cir.1994).

Numerous district courts have used individualized inquiries to determine that asthma does not substantially limit the major life activities of particular plaintiffs. *See, e.g., Boone v. Reno,* 121 F.Supp.2d 109, 111 (D.D.C.2000) (finding plaintiff's asthma not substantially limiting where, in her medicated state, plaintiff's asthma was "pretty well under control" and she was able to complete an FBI physical fitness test); *Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union,* 964 F.Supp. 719, 725 (S.D.N.Y.1997) (finding that a person's ability to breath was not substantially limited where her asthma only limited her ability to breathe in extreme cold or humidity or strong winds); *Gaddy v. Four B Corp.,* 953 F.Supp. 331, 337 (D.Kan.1997) (finding that a person was not substantially limited in her ability to breathe where she was able to control her asthma with an inhaler or a breathing machine); *Emery v. Caravan of Dreams,*

*Inc.,* 879 F.Supp. 640, 642–43 (N.D.Tex. 1995) (finding that plaintiff's asthma did not substantially limit any major life activity where she had worked as a flight attendant for twenty-nine years and was learning how to roller blade).

Although Plaintiff in this case may be at risk of suffering asthma symptoms, her symptoms do not substantially limit her major life activity of breathing. She has presented no evidence to distinguish her case of asthma from the circumstances described in the above cases. Just like the plaintiffs in *Ventura* and *Minnix,* Plaintiff's asthma only affects her when she breathes certain irritants like exhaust and paint fumes. According to her own deposition testimony, Plaintiff is able to perform many normal life activities like driving, pumping her own gas, walking, exercising, smoking cigarettes, and going to restaurants.

Plaintiff relies heavily on *Cehrs v. Northeast Ohio Alzheimer's Research Center* in which the court found that the plaintiff's severe case of psoriasis created a genuine issue of fact about whether she was substantially limited in a major life activity. *See* 155 F.3d 775, 781 (6th Cir. 1998). In *Cehrs,* the plaintiff intermittently suffered psoriasis "flare-ups." *Id.* at 778. Such flare-ups, however, lasted for months during which time the plaintiff was unable to perform normal functions such as driving, working, or dialing the telephone. *Id.* Furthermore, even when the plaintiff's psoriasis was in its dormant stage, the plaintiff suffered pain and received weekly medication that sometimes caused her to lose hair and fingernails. *Id.* at 781. In this case, Plaintiff's asthma is not so debilitating. No reasonable jury could conclude that Plaintiff is substantially limited in her ability to breathe, because unless she is exposed to certain chemical irritants, Plaintiff has no difficulty breath-

ing. Exposure to irritants results in only brief symptoms, not the chronic, month-long symptoms experienced by the *Cehrs* plaintiff. Furthermore, while Plaintiff can avoid irritants, the plaintiff in *Cehrs* could not act to avoid flare-ups.

Therefore, the Court finds that Plaintiff's asthma is not an impairment that substantially limits one or more of her major life activities.

## 2. Regarded as Disabled

■ Plaintiff also argues that she is disabled under the ADA because Defendant regards her as disabled. Under the ADA, "having a disability includes 'being regarded as having' . . . 'a physical or mental impairment that substantially limits one or more'" major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (citations omitted) (quoting 42 U.S.C.A. § 12102(2)). The parties do not dispute that Plaintiff has asthma. The issue, therefore, is whether Defendant mistakenly believes that Plaintiff's asthma substantially limits one or more of her major life activities. *See id.*

■ Plaintiff only contends that Defendant regards her as substantially limited in the major life activity of working. To be regarded as substantially limited in the major life activity of working, Defendant must regard Plaintiff as "unable to work in a broad class of jobs." *Id.* at 491–93, 119 S.Ct. 2139.

Plaintiff fails to present any evidence to support her allegation that Defendant regards her as substantially limited in the major life activity of working. To create a genuine issue of material fact on this issue, Plaintiff must point to some evidence that Defendant mistakenly believed that she was substantially limited in the major life activity of working. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir.2002). Randy

Moore, Defendant's Company Placement Director, testified during his deposition that Defendant does not assess whether an employee is disabled under the ADA when it evaluates ways to accommodate an employee's medical restrictions. (Moore Dep. at 13, 19.) Rather, Defendant tries to accommodate all medical restrictions irrespective of whether they constitute a disability under the ADA. (Moore Aff. ¶ 4.) Plaintiff presents no countervailing evidence in this case demonstrating that Defendant regarded her as foreclosed from a class of jobs such that she would be substantially limited in the major life activity of working. In fact, Defendant's attempts to return Plaintiff to her job in the plastics department demonstrate that Defendant did not regard Plaintiff as limited in her ability to work, except that she could not work in the presence of certain environmental contaminants. Defendant made efforts to purify the air in the plastics department, and tested the air in the office for contaminants. The only time that Plaintiff ever had difficulty working was when she entered the plastics department. Otherwise, during her tenure with Defendant she had not been limited in her ability to work due to her asthma.

■ The Court must consider evidence of Defendant's state of mind when deciding whether there is evidence that Defendant regarded Plaintiff as disabled. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001). Therefore, claims that an employer regarded an employee as disabled are "rarely susceptible to resolution at the summary judgment stage." *Id.* In *Ross*, summary judgment was not appropriate because the plaintiff presented evidence that the defendant referred to him as a "back case" and a "problem person" in an internal memorandum. *Id.* Furthermore, the court found that evidence that the defendant's stated reasons for terminating

the plaintiff were pretextual supported the plaintiff's argument that the defendant regarded him as disabled. *Id.* at 708. For example, although the defendant contended that the plaintiff was not qualified for his job, evidence such as the back case memorandum and suggestions that the plaintiff should retire indicated that the defendant's given reasons for terminating the plaintiff were pretextual. *Id.*

Plaintiff argues that, like in *Ross,* Defendant's explanations for its inability to place Plaintiff in a new position were merely pretextual and these pretextual explanations are evidence that Defendant regarded Plaintiff as disabled. Plaintiff contends first that Defendant fabricated its explanation that it had a long-standing policy of requiring associates to compete for new positions at Honda. Second, Plaintiff argues that Defendant's claim that she was not qualified for any other positions due to her poor disciplinary record was mere pretext because in fact, Plaintiff's performance had not caused Defendant to discharge her until her problems with asthma were discovered. Plaintiff's arguments fail because there is insufficient evidence to support her argument that Defendant's explanations regarding its inability to place Plaintiff in a new position were merely pretextual. In fact, Defendant did not discharge Plaintiff until she had been on disability for a year. Unlike in *Ross,* Plaintiff was not terminated from her job in the plastics department. Rather, Plaintiff stopped working in the plastics department because she was unable to breathe the air in the office. There is no evidence in this case such as the "back case" memorandum in *Ross* to suggest that Defendant's inability to place Plaintiff in a new position was due to anything other than Plaintiff's poor job performance.

Defendant has presented sufficient evidence to demonstrate that it had a compet-
itive application process for transferring its Office Support Associates between positions. Absent any evidence that Defendant refused to transfer Plaintiff for impermissible reasons, such as the "back case" memorandum in *Ross,* Defendant was entitled to hire the most qualified person for each of its OSA positions in other departments. During oral argument, Plaintiff argued that an inference can be made that because Plaintiff was not placed in a new position, she was in fact blackballed. But such an inference finds no basis in the record. In fact, Plaintiff only applied for 14 of the 37 OSA job opening during the one year period after she left the plastics department until she was permanently terminated. Of those 14 applications, 9 were untimely filed. The evidence shows that Plaintiff lacked the skills necessary for many of those positions, and that she was not the best candidate for any of them. (Barger Aff. ¶ 15; Moore Aff. ¶ 9.) Hence, no inference can be made that Defendant's competitive application process was a mere pretextual excuse to terminate Plaintiff because Defendant regarded her as disabled.

Therefore, Plaintiff is not actually disabled and was not regarded as disabled under the ADA; therefore, Plaintiff's ADA claim fails, and the Court need not consider whether Defendant made a reasonable accommodation for Plaintiff.

**B. Ohio State Law Disability Claim**

■ Plaintiff also alleges that Defendant violated Ohio employment law by failing to accommodate her. Ohio Revised Code section 4112.02(A) reads, in relevant part, as follows:

It shall be an unlawful discriminatory practice [f]or any employer, because of the ... disability ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire,

tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Revised Code § 4112.02(A) (West 2001). Because the essential elements of a claim under Ohio law and the ADA are the same, the Court examines Plaintiff's state and federal claims together. *See City of Columbus Civil Service Comm'n v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998) (stating that Ohio courts may look to cases interpreting the ADA for guidance in interpreting the Ohio statute); *Hoffman v. Fidelity Brokerage Servs., Inc.,* 959 F.Supp. 452, 457 n. 1 (S.D.Ohio 1997) (concluding that case law pertaining to claims brought pursuant to the ADA applies equally to claims brought under the Ohio antidiscrimination statute). This Court's analysis of Plaintiff's ADA claim applies with equal force to Plaintiff's state law claim.[1] Because Plaintiff is not disabled under the ADA, she is not disabled under the Ohio statute.

### C. State Intentional Tort Claim and Common–Law Wrongful Discharge Claim

Plaintiff consents to dismissal of her state intentional tort claim and common-law wrongful discharge claim. Therefore, the Court **DISMISSES** these claims with prejudice.

### VI. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

---

1. In fact, one Ohio court has applied the ADA disability analysis to determine that a plaintiff who suffered from asthma-like symptoms was not disabled under the Ohio statute where the plaintiff only had trouble breathing in cold air. *See DeBolt v. Eastman Kodak Co.,* 146 Ohio App.3d 474, 766 N.E.2d 1040, 1052 (2001).