Joseph M. SEBEST, Plaintiff–Appellee,

v.

CAMPBELL CITY SCHOOL DISTRICT BOARD OF EDUCATION; Michael Tsikouris, Defendants–Appellants.

No. 02–4012.

United States Court of Appeals, Sixth Circuit.

April 8, 2004.

Eric E. Norton, The Norton Law Firm, Cleveland, OH, for Plaintiff–Appellant.

James E. Roberts, Roth, Blair, Roberts, Strasfeld & Lodge, John C. Pfau, Pfau, Pfau & Marando, Youngstown, OH, for Defendants–Appellees.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

GIBBONS, Circuit Judge.

Joseph Sebest became treasurer of the Campbell City school district for a probationary term starting in March 1999. Sebest's employment with the school district elapsed on January 11, 2000, when his contract expired, and the Campbell City School District Board of Education (the "Board") offered him a new employment contract that provided for an annual salary approximately $4,000 less than the salary earned by Sebest under his first contract. Sebest rejected the second contract and filed suit in the United States District Court for the Northern District of Ohio against the school board and one of its members, Michael Tsikouris, for violations of federal and state disability discrimination law. Sebest and the defendants filed cross-motions for summary judgment, and the district court granted summary judgment to the defendants.

On appeal, Sebest challenges the district court's factual assumption that Tsikouris's views on Sebest's health did not influence other members of the school board. Accordingly, Sebest argues that the district court erred in granting summary judgment to the defendants on his disability discrimination claims. Sebest also asserts that the district court erred in deciding that he had not brought suit against Tsikouris in his individual capacity. For the reasons set forth below. we affirm the grant of summary judgment to the Board and Tsikouris.

## I.

In the early 1980s, Sebest was diagnosed with chronic myelogenous leukemia.[1] As treatment for his leukemia, he received a bone marrow transplant in 1984. Because of the transplant, Sebest acquired graft-versus-host disease, a condition that affects the lungs. Around 1999, Sebest experienced breathing-related difficulties, such as shortness of breath when he exerted himself, sinus drainage, and sputum production. His treating physician, Dr. Clay Braden Marsh, categorized Sebest's condition in 1999 as severe obstructive pulmonary lung disease and probably a combination of bronchiectasis and *bronchiolitis obliterans*.[2] Dr. Marsh testified that during this period Sebest generally could perform daily functions—such as getting up in the morning, brushing his teeth, and driving to work—but that his breathing problems became aggravated by stress or strenuous activity. According to Dr. Marsh's testimony, Sebest's abnormal pulmonary function may prevent him from being able to walk up a flight of stairs "on his bad days."

On March 25, 1999, the Board convened a special meeting to hire a probationary treasurer for the district. At the meeting, board member Bernard Petro remarked that Sebest had suffered from leukemia in the past. Board member Tsikouris asked the other board members if Sebest, who was in attendance for parts of the meeting, looked frail and whether he should be hired since he might not be well. Tsikouris is also discussed Sebest's $300 health insurance deductible. In addition, Tsikouris expressed concern that a recurrence of Sebest's illness could be costly to the school district. The other board members declined to discuss these issues, and several members even told Tsikouris that his comments were inappropriate.

Sebest was hired by the Board at an annual salary of $48,000, with three members voting in favor of his hiring and Tsikouris and another board member voting against it. Sebest then entered into a contract with the school board, which stated:

> This contract of employment entered into this 25th day of March 1999 by and between the Board of Education of the Campbell City School District, Mahoning County, Ohio, and Joseph M. Sebest hereafter designated as Treasurer.

> The said Board of Education, pursuant to motion duly adopted and in accordance with the provisions of Revised Code [§ ] 3313.22 hereby employs the said Joseph M. Sebest as Treasurer for a one (1) year probationary term beginning on April 6, 1999 through the Organizational Meeting in January of 2000.

1. In a 2002 deposition, Sebest stated that he no longer suffers from leukemia.

2. According to Dr. Marsh, bronchiectasis is abnormal dilation of the lower airways, which can predispose individuals to develop infections in the lung. *Bronchiolitis obliterans* occurs when there has been a small obliteration in the lungs and can be caused by graft-versus-host disease.

The said Board of Education in consideration of the services rendered by the Treasurer, hereby agrees to pay the said Treasurer an annual salary of $48,000.00 as adopted by the Board on March 25, 1999. If a renewal contract is adopted, said annual salary will be negotiated for each year of the contract and may be increased by action of the Board of Education at any time as per Ohio Revised Code [§ ] 3313.24. That the Treasurer per diem be based on 260 work days and divided into his total annual salary.

.　　.　　.　　.　　.

The said Treasurer agrees to enter into this contract of employment for the above designated term, and to diligently and faithfully perform his duties as Treasurer in accordance with the law for the above designated term or until such time as his contract may be terminated as prescribed by law.

Sebest served as school district treasurer for the period specified in his contract.

On January 11, 2000, the school board held its organizational meeting—the point at which Sebest's employment under his contract elapsed—and adopted a resolution offering Sebest a two-year probationary contract with compensation and benefits to be determined at a later time. On January 25, the Board adopted another resolution, which set the salary for treasurer at $44,000 and increased the contribution made on Sebest's behalf to the School Employees Retirement System from two percent to five percent of his salary.[3] The resolution also stated that a formal written contract would be prepared at a later date and presented to Sebest, who would then have two weeks to decide whether or not to accept it. On January 31, 2000, the Board presented Sebest with the proposed written contract, which Sebest eventually rejected.

Sebest pursued an ultimately unsuccessful administrative appeal of his dismissal in the Ohio Court of Common Pleas. Sebest then filed suit against the Board and Tsikouris in district court for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973. Sebest also alleged additional federal and state law claims.[4]

Sebest and defendants filed cross-motions for summary judgment. The district court denied Sebest's motion and granted defendants' motion for summary judgment with respect to Sebest's claims under the ADA, the Rehabilitation Act, and wrongful discharge in violation of public policy (disability discrimination).[5] The district court held that "[e]xamining all of the evidence

3. The Board members suggested the following annual salary figures for Sebest's second contract: $38,000 (Board member Rohan); $42,000 (Board member Tsikouris); $41,000 (Board member Rusnak); $ 48,000 (Board member Cougras); and $48,000 (Board member Gerlick). The Board eventually decided to offer Sebest a salary of $44,000 by averaging the salary figures provided by each of the five board members.

4. Sebest's complaint alleged the following claims: violations of Ohio Rev.Code § 4112; breach of contract; violation of 42 U.S.C. § 1983; wrongful discharge in violation of public policy (disability discrimination);

wrongful discharge in violation of public policy (Ohio Rev.Code § 3313.22); promissory estoppel; intentional infliction of emotional distress; and a claim for punitive damages. The district court granted Sebest's motion to dismiss the claims for violation of 42 U.S.C. § 1983, wrongful discharge in violation of public policy (Ohio Rev.Code § 3313.22), and intentional infliction of emotional distress.

5. The district court also dismissed Sebest's remaining state law claims because these claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction." *See* 28 U.S.C. § 1367(c)(2).

in the light most favorable to Sebest, there is nothing on this record to show that the Board discriminated against Sebest on the basis of a real or perceived disability." Sebest appeals the district court's decision.

## II.

This court reviews a district court's order granting summary judgment *de novo*. *Laderach v. U–Haul*, 207 F.3d 825, 827 (6th Cir.2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute over a material fact cannot be 'genuine' unless a reasonable jury could return a verdict for the nonmoving party." *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir.2001). In performing this review, we must draw inferences from the evidence in the light most favorable to the non-moving party. *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir.2003). "Accordingly, summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Laderach*, 207 F.3d at 828 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Sebest asserts that there is direct and indirect evidence that the Board discriminated against him because he is disabled. We affirm the district court's conclusion that the record does not support this claim. Specifically, Sebest has failed to present evidence that the *Board*—the decision-maker in this case—made decisions with respect to Sebest's employment based on his disability. Even assuming *arguen-*

*do* that the school board did make such decisions, we are unpersuaded that Sebest meets the definition of disability provided in the ADA.

## A.

■ In considering Sebest's discrimination claims, we must first review his challenge to the district court's factual assumption that Tsikouris's discussions about Sebest's health did not influence the decision of other board members to offer Sebest a second employment contract at a lower salary. On this point, the district court stated, "it is clear that the decision-maker/employer, that is, *the Board*, was not influenced by Tsikouris." We review *de novo* a district court's factual assumptions made at the summary judgment stage. *Brennan v. Township of Northville*, 78 F.3d 1152, 1156 (6th Cir.1996).

We see no reason to disturb the district court's determination that Tsikouris's personal views of Sebest did not direct the decision-making of the five-member Board. Sebest has presented evidence that Tsikouris made statements at the March 25, 1999, school board meeting about Sebest having leukemia. While members serving on the Board at that time testified that Tsikouris asked questions about Sebest's health and his health insurance deductible, Sebest has not presented any evidence that Tsikouris's remarks were shared—or were even considered—by other members of the Board. This conclusion is bolstered by the fact that, after Tsikouris raised the issue of Sebest's health, three board members told Tsikouris that his remarks were inappropriate. Furthermore, at the same meeting that Tsikouris discussed Sebest's health, the Board proceeded to hire Sebest under the first contract. The following year, the Board voted to offer him a second employment contract. In sum, while the record may provide information about

Tsikouris's personal views, it does not indicate that a majority of the Board—the only entity able to make decisions about Sebest's employment—supported his opinion.

## B.

Even if we construed Tsikouris's comments about Sebest to reflect the opinion of at least a majority of the Board, Sebest has not met his burden of showing that he is disabled under the ADA. To recover on an ADA claim, an individual must establish that he or she was a qualified individual with a disability at the time of the discriminatory act. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir.1996). In the ADA, the term "disability" is defined as, with respect to an individual: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Sebest claims that he is disabled under all three definitions.

■ Sebest first argues that his breathing is substantially limited. Breathing is indeed a "major life activity" for purposes of the ADA, 29 C.F.R. § 1630.2(i), because it is an activity "of central importance to daily life." *See Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (providing definition of "major life activity"). The term "substantially limits" in the definition of disability means

> [u]nable to perform a major life activity that the average person in the general population can perform; or *[s]ignificantly restricted* as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general popu-

lation can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (emphasis added). In considering whether an individual is substantially limited in a major life activity, the following factors are relevant:

> [1] The nature and severity of the impairment;
>
> [2] The duration or expected duration of the impairment; and
>
> [3] The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

In support of his claim that he is disabled, Sebest points to his affidavit testimony that his physical impairments include shortness of breath and significant difficulty with breathing and that his condition becomes aggravated when he is under stress. Sebest also cites the testimony of Dr. Clay Marsh, who stated that Sebest's condition affects his breathing when Sebest is under stress or has engaged in strenuous activity. Dr. Marsh did not indicate that Sebest's breathing is affected in the absence of these factors. In fact, Dr. Marsh testified that at the time Sebest was hired and served as school district treasurer, Sebest was able to perform normal daily functions—activities such as showering, eating, and driving to work—and was able to complete his job as treasurer. Only during what Dr. Marsh described as Sebest's "bad days" would Sebest encounter difficulty in breathing. The record does not indicate how often Sebest had a "bad day" or the duration of such a period.

This testimony fails to demonstrate that Sebest's condition *substantially* limits his breathing. Clearly Sebest's impairment does not render him unable to breathe. Therefore, for Sebest to demonstrate that

his impairment substantially limits his breathing, he must present evidence such that a reasonable jury could find that his impairment significantly restricted the condition or manner of his breathing, as compared to the average person in the population.[6] Looking to the nature and severity of Sebest's impairment, as explained by Sebest's statements and the testimony of Dr. Marsh, we conclude that Sebest has not presented such evidence. Both Sebest and his treating physician testified that his breathing becomes affected under stress or strenuous conditions. The record lacks any evidence indicating that, when Sebest is not under stress or is not performing a strenuous activity, his breathing is significantly restricted. Therefore, Sebest does not meet the first definition of disability in the ADA. *See Robinson v. Global Marine Drilling Co.,* 101 F.3d 35, 37 (5th Cir.1996) (noting that "[s]everal instances of shortness of breath when climbing stairs do not rise to the level of *substantially* limiting the major life activity of breathing"); *Minnix v. City of Chillicothe,* No. 98–4285, 2000 WL 191828, at *2 (6th Cir. Feb. 10, 2000) (holding that plaintiff failed to present a genuine question of material fact that impairment substantially limited breathing when there was no medical evidence that plaintiff's breathing problems were "severe, long term, or permanent"); *Ventura v. City of Independence,* No. 95–3582, 1997 WL 94688, at *2 (6th Cir. Mar. 4, 1997) (finding that plaintiff with asthma, which caused him difficulty breathing but did not prevent him from engaging in activities such as walking or playing baseball, was not substantially limited in breathing).[7]

█ Sebest also argues that he is disabled because he previously suffered from leukemia and leukemia-related health problems, thereby indicating that he has a record of a disability. While Sebest has presented evidence to show that he has suffered from leukemia in the past, he has not presented evidence demonstrating that he has a record of an impairment that substantially limits a major life activity. Sebest appears to assume that by having leukemia, he necessarily has a record of a disability. This understanding, however, is in conflict with the language of the ADA. An individual is disabled if he or she has a record of a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(2) (incorporating 29 C.F.R. § 1630.2(g)(1)); *see also* 29 C.F.R. § 1630.2(k) (stating that a person is disabled by having a record of an impairment when that person "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities").

Sebest has not provided evidence that the leukemia from which he suffered in the 1980s substantially limited a major life activity. Declaring leukemia a disability *per se* would contravene this court's "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518

---

6. We note that Sebest has only presented arguments that he is disabled because his impairment interferes with breathing and not because his impairment interferes with any other major life activity.

7. In his brief, Sebest cites *U–Haul Co. v. Kunkle,* an unpublished decision, for the proposition that a plaintiff who experienced breath-

ing problems that occasionally required him to go "out to [his] truck to get oxygen" in order to breathe was disabled under the ADA. No. 97–3524, 1998 WL 681253, at *3 (6th Cir. Sept. 16, 1998) (alteration in original). Unlike the plaintiff in *Kunkle,* Sebest has not presented evidence that he has ever needed an oxygen tank in order to breathe.

(1999). As the Supreme Court has explained, "[t]he [ADA] expresses that mandate clearly by defining 'disability' 'with respect to an individual,' 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on 'such individual,' § 12102(2)(A)." *Id.; see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (noting that "whether a person has a disability under the ADA is an individualized inquiry"); *Bragdon v. Abbott,* 524 U.S. 624, 641–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to consider whether HIV is a *per se* disability under the ADA); 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Since Sebest has failed to present evidence that he has a record of an impairment that substantially limits a major life activity, he is not disabled under the second definition of disability provided in the ADA.

■ Finally, Sebest argues that he was "regarded as" having a disability by his employer because of the concerns about Sebest's health expressed by Tsikouris at the March 25, 1999, board meeting. The Supreme Court has stated that there are two ways in which an individual can be regarded as disabled: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that

an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489.

■ As we previously discussed, decisions about Sebest's employment were made by the five member school board. Besides Tsikouris's comments, Sebest has offered no evidence that the *school board* made decisions regarding Sebest's employment with any consideration of his health condition. Therefore, as Sebest has failed to present evidence that a reasonable jury could find him to be disabled under the definitions of disability provided in the ADA, we affirm the grant of summary judgment to the defendants.[8]

Because we affirm the grant of summary judgment to the Board and Tsikouris, we do not need to consider whether Sebest sued Tsikouris in his individual or official capacity.

### III.

For the foregoing reasons, we affirm the decision of the district court granting summary judgment to the defendants.

---

**8.** Sebest asserts that he is also protected under Ohio disability discrimination law, Ohio Rev.Code § 4112.02. Our decision on Sebest's ADA claim is also dispositive of his state law disability claim. *Lockard v. Gen. Motors Corp.,* 52 Fed.Appx. 782, 785 n. 2 (6th Cir. 2002) ("This court's ruling with respect to [plaintiff's] ADA claim also disposes of her claim of disability discrimination under Ohio

law."); *see also City of Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998) ("The federal Americans with Disabilities Act . . . is similar to the Ohio handicap discrimination law. . . . We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").